The following are the facts, either established or admitted.
Bruno Morow and Emily R. Morow were husband and wife, having married September 29th, 1929. By deed to them, dated June 10th, 1930, they acquired title in fee as tenants by the entirety to premises in Maywood and held such title until January 29th, 1932. On that date Bruno Morow, in a fit of sudden rage or despondency, and in any event without premeditation, shot and killed his wife and thereafter committed suicide. He survived her by about thirty minutes. They had no children and the husband was then aged thirty-six years and the wife was forty years old. She had made a will dated June 19th, 1926, bequeathing and devising her entire estate to Mary E. Sherman, her mother, and appointing Howard Mackay executor thereof, which will has been probated. The husband made his will dated December 31st, 1931, whereby he bequeathed one dollar to his wife and bequeathed and devised the residue of his estate to Emil B. Weber and *Page 452 
Joseph Tillich, his nephews, and appointing Charles Schmidt executor thereof, which will has been probated.
The contest here is between the devisee and executor of the wife as complainants and the devisees and executor of the husband as defendants. Under normal conditions, upon the wife's prior death, the surviving husband would take the fee absolute of the real estate held by them by the entirety and upon his subsequent death his title would pass to the devisees under his will, but the complainants urge that because the husband's criminal act caused his wife's death, it would be inequitable to permit him to take any estate and pass it to his devisees and that it should be decreed that said devisees hold the legal title in trust for complainant Mary E. Sherman and that they have no estate or interest in the property.
Tenancy by the entirety is a creature of the common law and the rights of husband and wife so seized have been defined and universally recognized by the courts of this state. Their interests under such tenure amount to a tenancy in common between them for their joint lives with remainder to the survivor.Neubeck v. Neubeck, 94 N.J. Eq. 167. Should it be deemed wise to attach any limitation, condition or exception to such a tenancy, it is the function of the legislature and not of the courts, to so determine. If, for instance, it is proposed that a husband seized as a tenant by the entirety, who murders his wife, should forfeit all interest in such estate, the legislature and not this court should make the necessary change in the law, but as no legislature has ever dealt with the rights of tenants by the entirety, I must decline to hold in this case that because he caused his wife's death the husband lost all rights in the property in question, nor can I say that upon her death the fee to that property did not vest in him as survivor. But the common law under which estates by the entirety were created, declared certain equitable rules and principles which, too, have been adopted as settled law by the courts of this state, namely, that no one shall be permitted to profit by his fraud or wrong, or found any claim upon his own iniquity, or acquire property by his *Page 453 
own crime. Those rules should be applied for the purpose of arriving at an equitable solution of the question here presented; therefore while this husband's criminal act cannot deprive him of the rights he had in the property up to the moment of his wife's death, no higher or greater rights should accrue to him through the commission of a felonious homicide. Had he not killed his wife but had he obtained by any unconscionable act, such as duress or fraud, a conveyance of her right to possession for her life, or a conveyance which accelerated the time of his enjoyment of the fee, this court upon her application would deprive him of the advantage of his act and would restore her interest to her. Had she remained in possession of her half of the property for her natural life, her estate would probably have been increased by the profit which she would have derived through that possession and the husband's crime was a fraud on complainants to whom her estate was bequeathed and devised. Equity will refuse to permit the husband, or those who claim through him, to profit by the murder and will do justice by restoring the property rights, as nearly as may be, as they were at the time the husband slew his wife, adjudging that because of the act through which the husband became seized of the fee, he was trustee thereof for the interest his wife would have had, had he permitted her to live her normal expectancy of life and that while the title in fee was vested in the husband and passed under his will to the defendants, they hold it subject to such trust.
The wife was older than her husband and in the natural course of events she would have predeceased him and he would ultimately have become the owner of the fee, as the survivor. The heir of the wife is therefore entitled to have the commuted value, as of the date of the wife's death, of the net income of one half of the property for the number of years of the wife's expectancy of life, to be ascertained according to the mortality tables used by this court. If the parties cannot agree what that sum should be, it will be referred to a master to determine and there will be a decree that such sum be paid by the defendants to the complainants *Page 454 
(with costs of this suit) within a time to be specified, in discharge of the trust which is imposed on the fee and in default of such payment, that the property be sold by a master to pay first, the expenses of such sale, second, the amount due the complainants and finally, the surplus to the defendants. In the meantime the defendants will be restrained from disposing of, or in anywise affecting, the title to the premises.
In Sorbello v. Mangino, 108 N.J. Eq. 292, I had occasion to consider, but not decide, a question quite similar to that here presented and I there stated that on the question whether a murderer should be permitted to take property from or through one whose death he caused, courts have rendered three different lines of decision. The cases there cited under the third head are those upon which I rely to support the conclusion here reached. Since filing that opinion I have found no case to add to those cited under that head, but I would add to head one, Hogg v. Witham,120 Kan. 341; Kuhn v. Kuhn, 125 Iowa 449; Bruns v. Cope,182 Ind. 289; Debus v. Cook, 198 Ind. 675; Harrison v. Moncravie,264 Fed. Rep. 776, the appeal from which was dismissed as VanTine v. Moncravie, 255 U.S. 562, and I would add to head two,Garwols v. Bankers Trust Co., 251 Mich. 420.