CAMPBELL, Judge.
Appellant is the adopted son of the decedents, Peter and Anna Yanowsky, and was fifteen years of age and residing with them at the time of their deaths. Appellees are the personal representatives of the deceased parents’ respective estates. At issue is the correctness of certain portions of the probate court’s order which was entered on the appellees’ consolidated petition to determine survivorship and beneficiaries. We affirm.
Peter and Anna Yanowsky were bludgeoned to death by appellant and a classmate [1] on May 25,1978. It was subsequently determined that their deaths were simultaneous. At the time of their deaths, each had a will which left certain sums of money to relatives and the residue to the surviving spouse, and provided that in the event both died as a result of a common disaster, the residue of their property should be placed in a support, maintenance and education trust for appellant. Among other assets, decedents owned the marital residence as ten *1298 ants by the entirety and a total of $2,275 in United States Savings Bonds which each had separately purchased and registered in coownership form with appellant at various times when appellant was between five and ten years of age.[2]
Appellees’ consolidated petition sought to determine, inter alia, whether the marital residence was homestead property, or whether it passed under the residuary clause of decedents’ wills. In addition, the probate court was asked to decide whether appellant was entitled to the savings bonds under the survivorship provision of the Treasury Regulations. 31 C.F.R. § 315.62.[3]
With respect to the marital residence, the court ruled that, having been held by decedents as a tenancy by the entirety, the residence was not homestead,[4] and that, upon the simultaneous death of the parents, it was to be divided one-half to each estate and pass under the residuary clauses of their wills.[5] Since the court ruled that the murder inheritance statute was applicable,[6] appellant was denied any interest in the residence which he might have had as the residuary beneficiary of the wills of his parents. We agree with the reasoning of the probate judge on this point and affirm. A wrongdoer will not be permitted to profit from his criminal act. Carter v. Carter, 88 So.2d 153 (Fla.1956).
With respect to the United States Savings Bonds, the court concluded that although the Treasury Regulations controlled the determination of ownership on the death of a coowner,[7] they did not specifically treat the question of a coowner’s rights where he murdered the other coowner. Because the United States Supreme *1299 Court has held that state law may be applied under appropriate circumstances, Yiatchos v. Yiatchos, 376 U.S. 306, 84 S.Ct. 742, 11 L.Ed.2d 724 (1964); Free v. Bland, 369 U.S. 663, 82 S.Ct. 1089, 8 L.Ed.2d 180 (1962), and because Florida law prevents a person from profiting by his wrongdoing, Carter v. Carter, supra, the court ruled that the bonds should also be distributed as part of each decedent’s estate.
The essence of appellant’s argument with respect to the probate court’s ruling on this point is that while the court correctly looked to state law, it erred in applying Carter v. Carter, supra, and instead should have granted appellant a one-half interest in the bonds under the rationale of Ashwood v. Patterson, 49 So.2d 848 (Fla.1951). We agree with the probate court’s result based on state law, as Ashwood v. Patterson, supra, can and should be distinguished, but we also conclude that the same result can be based on federal law.
Yiatchos and Free v. Bland stand for the proposition that a wrongdoer will not be allowed to profit by using the Treasury Regulations pertaining to survivorship rights of coowners of treasury bonds to contravene state law; therefore, state law should prevail to determine the survivor’s or beneficiary’s interest in the savings bonds. The question in Yiatchos was whether, as a matter of federal law, a deceased husband had defrauded his surviving widow of her rights in community property by purchasing bonds with community funds and registering them in his name with his brother as named beneficiary. Whether there was fraud, however, depended upon the surviving widow’s rights under state law.
We agree that the survivorship provision may not be claimed by a coowner or beneficiary as a sanctuary for his wrongdoing. Appellant’s rights, if any, with respect to the savings bonds can be determined by the Treasury Regulations. Those regulations provide that appellant was not entitled to the bonds unless his parents predeceased him without having presented the bonds for payment or reissue. Appellant would not have become the sole and absolute owner until those conditions were met. 31 C.F.R. § 315.62. Since the parents apparently retained possession of the bonds, and had another child as well as other relatives, they could have intended to surrender the bonds for payment or reissue or several other methods of disposition of the bonds that would have precluded appellant from ever becoming owner of the bonds or their proceeds. We will not assume that they did not so intend. By murdering his parents, appellant not only deprived them of their options in regard to the bonds, but he now attempts to claim that he assured himself of a one-half interest in the bonds. To support that claim would be to reward a wrongdoer for his crime, something which the federal courts have consistently refused to do in similar contexts. New York Mutual Life Insurance Company v. Armstrong, 117 U.S. 591, 6 S.Ct. 877, 29 L.Ed. 997 (1886); Austin v. U. S., 125 F.2d 816 (7th Cir. 1942). Indeed, in Austin, although federal law gave the beneficiary of a war risk life insurance policy an absolute right to the proceeds upon the death of the insured, the court held that a beneficiary who murders the insured is not, on equitable grounds, entitled to the proceeds. Issuance of the war risk policy was authorized and governed by federal law. We see no basis for a different result here.
Since the Florida courts also apply this equitable principle, we would not reach a different result in the absence of any federal law. Carter v. Carter, supra; Hogan v. Martin, 52 So.2d 806 (Fla.1951). Appellant’s reliance on Ashwood v. Patterson, supra, is misplaced. The court’s conclusion in that case that a husband who murders his wife is still entitled to one-half of property held as a tenancy by the entirety was compelled by the nature of that tenancy under Florida property law. That is, although the husband was entitled to one-half of the property in any event, he was entitled to the entire property only if he outlived his wife. Since the murder was the act which ensured that he would outlive her, to have granted him the entire property would have permitted him to profit by *1300 his wrongful act. Thus, the murder was likened to a dissolution of marriage and the tenancy was converted to one in common. In a tenancy by the entirety both parties must act to dispose of the property. Here, the parents alone could have disposed of the property without the joinder of the appellant. Only their murder by the appellant prevented them from doing so.
We, therefore, AFFIRM.
GRIMES, C. J., and RYDER, J., concur.

. Appellant confessed, was adjudicated guilty of first degree murder and is currently serving a life sentence.

. Ten bonds with a face value of $1,700 had been purchased by Anna; four bonds with a face value of $575 had been purchased by Peter. These purchases took place between 1968 and 1973, when the parties still resided in New Jersey. Decedents apparently retained possession of the bonds.
It is also interesting to note that Peter Ya-nowsky had purchased stock certificates under the New Jersey Gift to Minors Act as a gift to appellant. The probate court ruled that because this Act vested legal title to the stock certificates in appellant prior to his father’s death, appellant could not be divested of his interest under Florida law.

. That section provides in pertinent part:
If either coowner dies without the bond having been presented and surrendered for payment or authorized reissue, the survivor will be recognized as the sole and absolute owner. Thereafter, payment or reissue will be made as though the bond were registered in the name of the survivor alone.
With respect to payment during the lives of both coowners, Section 315.60 of the regulations provides that “[a] savings bond registered in coownership form . . . will be paid to either upon his separate request, and upon payment to him the other shall cease to have any interest in the bond. . . . ”

. Section 732.401(2), Florida Statutes (1977), provides:
(2) If the decedent was domiciled in Florida and resided on real property that the decedent and the surviving spouse owned as tenants by the entirety, the real property shall not be homestead property.

. Section 732.601(3), Florida Statutes (1977), provides:
(3) When there is insufficient evidence that two joint tenants or tenants by the entirety died otherwise than simultaneously, the property so held shall be distributed one-half as if one had survived and one-half as if the other had survived. . . .

. Section 732.802, Florida Statutes (1977), provides:
A person convicted of the murder of a decedent shall not be entitled to inherit from the decedent or to take any part of his estate as a devisee. The part of the decedent’s estate to which the murderer would otherwise be entitled shall pass to the persons entitled to it as though the murderer had died during the lifetime of the decedent.

. 31 C.F.R. § 315.5 provides that the registration used on issue of savings bonds “must express the actual ownership of and interest in the bond and . . . will be considered as conclusive of such ownership and interest.” One of the authorized forms of registration is coownership form. 31 C.F.R. § 315.7. Finally, Section 315.20 provides in pertinent part:
(a) No judicial determination will be recognized which would give effect to an attempted voluntary transfer inter vivos of a bond, whether between persons designated thereon, or otherwise, or which would defeat or impair the rights of survivorship conferred by these regulations upon a surviving coowner or beneficiary